UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SENAH, INC,<br><br>        Plaintiff,<br><br>    v.<br><br>XI'AN FORSTAR S&T CO, LTD,<br><br>        Defendant. | Case No. 13-cv-04254-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND JUDGMENT**<br><br>[Re: ECF 158] |

      Plaintiff Senah, Inc. seeks recovery of unpaid commissions on sales of Defendant Xi'an Forstar S&T Co., Ltd.'s products within its sales territory as provided in a 2004 sales management contract. Plaintiff is a corporation with its principal place of business in California. Order on Summary J. 2, ECF 127. Donald Hanes was the president and sole shareholder of Plaintiff at all relevant times. *Id*. at 2-3. Plaintiff contracted Defendant to serve as Defendant's authorized sales representative within North America, Central America, and South America. *Id*. at 3. Defendant is a business organization with its principal place of business in China. *Id*. at 2. Defendant sells various electronic components such as castings, microwave & RF components, connectors, and adapters. *Id*.

      This matter is before the Court on Plaintiff's request for default judgment, although the case was initially litigated with the active participation of Defendant.

      Plaintiff filed the Complaint on September 13, 2013. ECF 1. Defendant engaged counsel

and the parties went through three rounds of motions to dismiss, *see* ECF 46, 63, 80, during which Plaintiff amended the Complaint two times, *see* ECF 49, 68. The parties also filed motions for partial summary judgment. ECF 96, 110. As a result of those motions, the Court dismissed Plaintiff's claim for fraud, Order Granting MTD 1, ECF 80, and determined that triable issues of material fact existed as to (1) whether the 2004 sales management agreement was a valid and enforceable contract and (2) whether the California Independent Wholesale Sales Representatives Act, Cal. Civ. Code § 1738.10 et seq., applied to this action, Order on Summary J. 15, ECF 127. Thereafter, and unexpectedly, Defendant's counsel sought to withdraw after being terminated by Defendant, which the Court allowed. Defendant advised the Court that it would no longer continue to appear and ceased participating in the litigation. ECF 142. The Court issued several orders to Defendant explaining that withdrawing from this litigation could result in default judgment being entered against it. ECF 133, ECF 134, ECF 143 ("The Court advises Defendant Xi'an Forstar S&T Co., Ltd. that a failure to retain an attorney and participate in this litigation could result in default judgment being entered against it."). Having satisfied itself that Defendant was fully advised of the consequences of its actions, the Court proceeded with the case.

Plaintiff moved for default judgment and upon recognizing that its claim for damages was greater than initially pled, the Court allowed Plaintiff to amend the complaint. ECF 152. Plaintiff filed proof of service on Defendant of the amended complaint. ECF 156.

By its Third Amended Complaint ("TAC"), Plaintiff alleges Defendant breached a 2004 contract. According to Plaintiff, the parties entered into a sales management agreement in 2004. TAC ¶ 8. In that contract, Defendant hired Plaintiff to serve as Defendant's authorized sales representative within North America, Central America, and South America ("territory"). *Id*. at ¶ 8a. The 2004 Sales Management Agreement also states that Plaintiff is presumed to be the procuring cause of any sales outside the territory and will be paid a twenty percent commission on all sales outside the territory. *Id*.

During the next five years, the contract was modified with respect to sales to CommScope. In July 2006, the contract was modified to provide that Defendant shall pay reduced commission of eighteen percent on sales to CommScope (fifteen percent to Plaintiff and three percent to Mr.

2

Hanes who assigned his commission to Plaintiff). *Id*. at ¶ 8b. In January 2008, commissions on sales to CommScope were further modified to provide for a commission of sixteen percent for the first year, fifteen percent for the second year, and fourteen percent for subsequent years. *Id*. at ¶ 8c. This option expired on December 31, 2010 with an option for automatic annual renewal. *Id*. A non-renewal notice had to be given 30 days prior to expiration. *Id*. In January 2009, Plaintiff alleges Defendant re-affirmed the prior agreements. *Id*. at ¶ 8d. As modified, the contract could only be terminated for fault with 180 days' notice or without cause with 30 days' notice prior to the automatic renewal date. *Id*. at ¶ 8e. If the contract was terminated, Plaintiff had the option to return its inventory to the Defendant at the original purchase price. *Id*. at ¶ 8f.

## I. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F. 2d 1089, 1092 (9th Cir. 1980).

In exercising its discretion to enter default judgment, a district court considers seven factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) ("*Eitel* factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. In considering these factors after a clerk's entry of default, the court takes all well-pleaded factual allegations in the complaint as true, except those with regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The Court may, in its discretion, consider competent evidence and other papers submitted with a motion for default judgment to determine damages. *Id.*

## II. DISCUSSION

Before discussing the *Eitel* factors, the Court notes that on default, the Court is required to assume liability as pled. Had Defendant continued to participate in this litigation, the result of this

case may very well have been different.

### i. Factor One: Possibility of Prejudice to the Plaintiffs

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. Without entry of default, Plaintiff has no other means of recourse for Defendant's breach of the 2004 contract. Accordingly, the first factor favors entry of default judgment. *See, e.g., Wilamette Green Innovation Ctr., LLC v. Quartis Capital Partners*, No. 14-cv-00848, 2014 WL 5281039-JCS, at *6 (N.D. Cal. 2014) (citations omitted) ("Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor.").

### ii. Factors Two and Three: Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

The Court considers the second and third *Eitel* factors—concerning the merits of Plaintiff's substantive claims and the sufficiency of its Complaint—together because of the relatedness of the inquiries. In analyzing these factors, the Court accepts as true all well-pleaded allegations regarding liability. *See, e.g.*, *HICA Educ. Loan Corp. v. Warne*, Case No. 11-cv-04287-LHK, 2012 WL 1156402, at *2 (N.D. Cal. April 6, 2012).

Count 1 of the Complaint is for breach of contract against Defendant. In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Here, Plaintiff has alleged a contract with Defendant, TAC at ¶ 8, performance, TAC at ¶ 13, breach, TAC at ¶ 12, and damages, TAC at ¶¶ 14-16. Therefore, Plaintiff has adequately pleaded a claim for breach of contract and the second and third *Eitel* factors weigh in favor of an entry of default judgment.

### iii. Factor Four: The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in the litigation. *BMW of North Am., LLC v. Zahra*, Case No. 15-cv-2924-CRB, 2016 WL 215983, at *4 (N.D. Cal. Jan. 19, 2016). When the amount is substantial or unreasonable, default judgment is discouraged. *Id*. With interest, Plaintiff seeks $76,686,692.04 in damages. Considering the

amount of money Plaintiff seeks, this factor weighs against the entry of default judgment.

    **iv. Factors Five: The Possibility of a Factual Dispute**

  Under the fifth *Eitel* factor, the Court considers whether there is the possibility of a factual dispute over any material fact. *BMW*, 2016 WL 215983 at *4. Given the sufficiency of the Complaint, Defendant's refusal to participate in this action, and resulting default, no dispute has been raised regarding material facts of the TAC. This factor weighs in favor of entry of default judgment.

    **v. Factor Six: Whether Default Was Due to Excusable Neglect**

  The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiff's Complaint was the result of excusable neglect. *BMW*, 2016 WL 215983 at *4. As the Court previously discussed, Defendant participated in this action and then inexplicably, terminated its counsel and stopped defending this action. Based on Defendant's initial participation and defense of this action and the Court's notices to Defendant that default may occur if it ceases to participate in this action, the Court concludes that Defendant's failure to participate in this action is not the result of excusable neglect. Therefore, this factor also weighs in favor of entry of default judgment.

    **vi. Factor Seven: Policy Favoring Decisions on the Merits**

  The final *Eitel* factor focuses on the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate. *J & J Sports Prods., Inc. v. Deleon*, No. 5:13-CV-02030, 2014 WL 121711, at *2 (N.D. Cal. Jan. 13, 2014). Therefore, this general policy is outweighed by the more specific considerations in this case, and the seventh *Eitel* factor weighs in favor of default.

    **vii. Summary**

  In consider all seven *Eitel* factors, the Court finds default judgment is warranted and GRANTS Plaintiff's motion for default judgment against Defendant.

5

### III. TERMS OF THE JUDGMENT

After finding default is appropriate, the Court reviews Plaintiff's claims for damages. Plaintiff submitted significant evidence to prove its request for damages. ECF 158-162, 167. That evidence is as follows.

Plaintiff established through Defendant's answers to interrogatories that during the contract period,[1] Defendant's total revenue within Plaintiff's territory was $290,358,330.41.[2] Def.'s Supp. Responses to Interrogatories 9, ECF 167-9; Ochynski Decl. 3-4, ECF 167-4 (converting Chinese RMB to US dollars). Plaintiff's expert, Glen Balzer, a forensic and management consultant with experience advising parties involved in relationships and contracts between suppliers, manufacturers' representatives, customers and distributors, Balzer Expert Rep. 4, ECF 161-3, opined that Plaintiff is a manufactures' representative and an independent wholesale sales representative within the meaning of Cal. Civ. Code § 1738.10 et seq., *id*. at 11-12. Plaintiff has further submitted evidence of all commissions paid to it and subtracted those amounts from the requested damages. Exhs. A and B, ECF 167-2, ECF 167-3; *see also* Default Hearing Tr. 16:2-18-3 (Mr. Hanes testifying that he subtracted all payments received). Plaintiff requests an award of the contractual 20% commission on Defendant's sales, resulting in a total $58,071,666.09. Ochynski Decl. 4, ECF 167-4. The Court having reviewed the submissions finds the evidence supports Plaintiff's request.

Plaintiff further seeks prejudgment interest of 10% per year. Where jurisdiction is based on diversity, California state law controls the awarding of prejudgment interest. *Gentek Media, Inc. v. Media Servs. Omaha*, Case No. 07-cv-7015-DSF(OPx), 2009 WL 1606157, at *2 (C.D. Cal. June 2, 2009). California law provides that the interest rate for prejudgment interest, where

---

[1] Under the statute of limitations, Plaintiff may not seek damages prior to 2009. As a result, the relevant contract period for damages starts in 2009. Order 7, ECF 94.
[2] When Plaintiff first presented its motion for default judgment, it used a conversion rate for Chinese RMB to U.S. dollars obtained from the internet. Plaintiff's calculated Defendant's total sales to be $290,358,330.41. Ochysnki Decl. 4, ECF 167-4  Subsequently, Plaintiff obtained the services of an expert, Dr. Walter Ochynski, who calculated the exchange rate using tables published by the US Federal Reserve. *Id*. at 1-7. He calculated Defendant's total sales to be $290,406,611.77. *Id*. at 3-4. Ultimately, when the commission percentage was applied, this resulted in Plaintiff's initial calculations being $9,700 lower. Plaintiff has agreed to waive its entitlement to the higher sum, ECF 167 at 6, and accordingly, the Court uses the lower numbers.

no interest rate is set by the contract between the parties, is 10% per year.  Accordingly, prejudgment interest at the rate of 10% per year shall be assessed on the damages.  Plaintiff has provided interest calculations at Exhibits A and B and its prejudgment interest totaled $18,660,531.32.  The Court, having reviewed Plaintiff's calculations, awards Plaintiff prejudgment interest in the amount of $18,660,531.32.

Plaintiff also seeks as attorney's fees as provided for in the contract, ECF 159-4 at 6 (providing for attorney's fees), and under the Independent Wholesalers Sales Act, Cal. Civ. Code § 1738.16 (providing for attorney's fees).  In calculating awards for attorney's fees, courts use "the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (internal quotation marks and citations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).  The moving party bears the burden of providing relevant documentation demonstrating the reasonableness of the hours spent on the litigation.  *Hensley*, 461 U.S. at 433.  In the absence of adequate documentation supporting the number of hours expended on the lawsuit, "the district court may reduce the award accordingly." *Id*.  "The district court also should exclude from this initial [lodestar] calculation hours that were not 'reasonably expended.'" *Id.* at 434 (quoting S. Rep. No. 94-1011, p. 6 (1976)).  When determining the reasonable hourly rate, the court must weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 886 (1984). Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation.  *Morales*, 96 F.3d at 363-64, 363 nn.3-4 (identifying factors) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

1    Plaintiff's counsel requests payment for 404.7 hours worked, ECF 159-1 at 6, at a rate of
2    $300 per hour, ECF 159 at 2. Under the lodestar analysis, the Court must first determine whether
3    counsel's rates are reasonable, as determined by "the prevailing market rates in the relevant
4    community." *Blum*, 465 U.S. at 886. The market rates used in this comparison should pertain to
5    attorneys with similar "skill, experience, and reputation" to the moving attorneys. *Chalmers*, 796
6    F.2d at 1211(citing *Blum*, 465 U.S. at 895 n.11). Second, the Court must examine whether the
7    hours expended on this litigation are reasonable.

8    Plaintiff seeks to recover fees for the work performed by its attorney, Anthony Santucci.
9    Mr. Santucci is a 1978 *magna cum laude* graduate of the University of Santa Clara School of Law,
10   was admitted to the California Bar that same year, and has practiced as a lawyer continuously
11   since then. Santucci Decl. ¶ 4, ECF 159. Mr. Santucci has also been a certified public accountant
12   since 1976. *Id.* at ¶ 5. Mr. Santucci has practiced as a solo practitioner since 1981 and his billing
13   rate has been $300 per hour since 1990. *Id.* at ¶ 6. Based on the Court's experience, the Court
14   finds Mr. Santucci's billing rate is more than reasonable in light of the rates charged by similarly
15   situated counsel in the Northern District of California. *See also* Exh. Q (United States Consumer
16   Law Attorney Fee Survey Report) 81, ECF 162.

17   The Court reviews the hours spent on this litigation by Mr. Santucci. ECF 159-1 at 1-6
18   (billing records). In total, Mr. Santucci expended 404.7 hours prosecuting this case from
19   December 28, 2012 to March 21, 2016. The Court has reviewed all of Mr. Santucci's billing
20   entries and finds that the time spent on the various parts of this litigation was reasonable in light of
21   the issues in this case and counsel's performance during the litigation. Until Defendant terminated
22   its counsel and stopped participating in this case, Defendant vigorously defended this case
23   including filing multiple motions to dismiss and contesting this case through summary judgment.
24   In light of the nature of Defendant's defense, the Court finds the total number of hours spent to be
25   reasonable and in reviewing each billing entry, the Court finds the time spent per task to also be
26   reasonable.

27   On the preceding basis, the Court approves 404.7 hours at $300 per hour for a total
28   lodestar amount of $121,410.00.

8

Next, the Court considers whether Plaintiff's request for a multiplier of 2.5 is appropriate. The lodestar amount, while presumptively reasonable, may be adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales*, 96 F.3d at 363, n.8 (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). "The twelve *Kerr* factors bearing on the reasonableness are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.*

Plaintiff explains that this case was time and labor intensive. Santucci Decl. ¶ 19, ECF 159. Plaintiff argues that Defendant's aggressive defense increased time spent on this case. *Id*. at ¶ 13. Counsel also notes that litigating this case required him to bypass other opportunities and that he worked on a contingency basis. *Id*. at ¶¶ 18-19. In addition, Mr. Santucci contends that he was uniquely qualified to litigate this case given his experience and knowledge with the contract enforcement and the Independent Wholesale Sales Representatives Act. *Id*. at ¶ 14.

The Court agrees that this case was hard fought until Defendant ceased participating int his action and that Plaintiff's contingency-fee arrangement justifies a multiplier. However, the legal issues involved should have been relatively standard for a lawyer of counsel's experience and expertise. On balance, the Court finds a multiplier of 1.2 is appropriate for a total attorney's fee award of $145,692.00.

In sum, the Court has considered the evidence and determined that Plaintiff is entitled to recover its unpaid commissions in the amount of $58,071,666.09 and prejudgment interest in the amount of $18,660,531.32 for a total recovery of $76,732,197.41. Plaintiff is also entitled to reasonable attorney's fees in the amount of $145,692.00.

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's motion for default

1  judgment is GRANTED.  The Court furthers enters judgment in favor of Plaintiff and against

2  Defendant in the amount of $76,877,889.41, consisting of: (1) $58,071,666.09 in damages; (2)

3  $18,660,531.32 in prejudgment interest; and (3) $145,692.00 in attorney's fees.

4  **IT IS SO ORDERED.**

5  Dated: June 2, 2016

6  _____
   BETH LABSON FREEMAN
7  United States District Judge